UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA GAIL SNYDER,

    Plaintiff,

v.                                          Case No.:  8:22-cv-1146-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Sandra Gail Snyder seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

C.  **Procedural History**

Plaintiff applied for a period of disability and disability insurance on October 27, 2016, alleging disability beginning on September 16, 2016. (Tr. 100, 197-98). The applications were denied initially and on reconsideration. (Tr. 100, 118). Plaintiff requested a hearing, and on April 1, 2019, a hearing was held before

Administrative Law Judge Lloyd Hubler, III ("ALJ"). (Tr. 43-86). On April 24, 2019, the ALJ entered a decision finding Plaintiff not under a disability from September 16, 2016, through the date of the decision. (Tr. 28-38).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on April 23, 2022. (Tr. 1-6). Plaintiff filed a Complaint (Doc. 1) on May 18, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act on December 31, 2021. (Tr. 30). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 16, 2016, the alleged onset date. (Tr. 30). At step two, the ALJ found that Plaintiff had the following severe impairments: "ankylosing spondylitis and obesity." (Tr. 30). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 32).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform

> sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except that the claimant is only able to frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl. Additionally, the claimant is only able to perform frequent handling, fingering, and fine and gross manipulation. The claimant is only able to have frequent exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, and similar pulmonary irritants. She is only able to have occasional exposure to hazardous moving machinery and unprotected heights.

(Tr. 32-33).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a medical records clerk. (Tr. 36). At step five, the ALJ found that considering Plaintiff's age (53 years old on the alleged disability onset date), education (at least high school), work experience, transferable work skills, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 37-38). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   circulation clerk, DOT 209.362-010, sedentary, semi-skilled, SVP 3[1]

    (2)   yard clerk, DOT 209.367-054, sedentary, semi-skilled, SVP 3

    (3)   credit card clerk, DOT 209.587-014, sedentary, semi-skilled, SVP 3

    (4)   automobile locator, DOT 296.367-010, sedentary, semi-skilled, SVP 3.

(Tr. 37). The ALJ concluded that Plaintiff had not been under a disability from September 16, 2016, through the date of the decision. (Tr. 38).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

## II.     Analysis

On appeal, Plaintiff raises two issues:

(1)     Whether the ALJ's finding that Plaintiff's Licensed Mental Health Counselor's opinion was entitled to little weight was supported by substantial evidence; and

(2)     Whether the Appeal Council erred in denying Plaintiff's request for review and in finding the opinion of Mr. Van Leuven did not relate to the period at issue.

(Doc. 13, p. 2, 12).

### A.     Weight Afforded to Keith J. Van Leuven, LMHC's Opinion

On appeal, Plaintiff challenges whether the ALJ properly weighed the medical opinion of Mr. Van Leuven. (Doc. 13, p. 4-12). Plaintiff claims that the reasons given by the ALJ were insufficient to afford little weight to his opinion. (Doc. 13, p. 6).

For disability cases filed before March 27, 2017[2] – such as this one – at step four, an ALJ must properly consider treating physicians, examining physicians, non-examining physician, and other source opinions, and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). As a licensed mental health counselor, Mr. Van Leuven is not included in the list of "acceptable medical source[s]" for disability cases. 20 C.F.R. § 404.1315(a). Instead he is considered

---

[2] For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. *See*  20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).

an "other source." 20 C.F.R. § 404.1513(d). The distinction between these two is important because only an acceptable medical source may establish the existence of a medically determinable impairment, can provide medical opinions, and can be considered a treating source, whose opinion may be entitled to controlling weight. SSR 06-03p. As an "other source," Mr. Van Leuven may provide evidence to show the severity of a plaintiff's impairment and how it affects that person's ability to function. *Id.*

Mr. Van Leuven saw Plaintiff from November 2017 through February 2019, generally once or twice a month. (Tr. 537-41; 543-48). Except for August 2018 and October 2018, from November 2017 through February 2019, Mr. Van Leuven found Plaintiff's affect appeared sad, depressed, anxious, or blunted, with occasional restrictive emotional range. (Tr. 537-39). When Plaintiff first began treatment, Mr. Van Leuven found Plaintiff oriented times 3 with no evidence of hallucinations or delusions. (Tr. 537). In August and October 2018, Plaintiff's affect appeared appropriate to topic, and she was doing better. (Tr. 539-540). Throughout his notes, Mr. Van Leuven helped Plaintiff learn techniques to cope with her emotional problems and her negative or discouraging thoughts. (Tr. 537-40).

On March 14, 2019, Mr. Van Leuven completed a Mental Medical Source Statement. (Tr. 543-548). He noted that Plaintiff was consistently oriented to

person, place, and thing but had slowed cognitive ability because of the severity of her depression. (Tr. 543). He found she had many extreme or serious limitations in her mental ability and in her aptitudes needed to do unskilled work. (Tr. 545). He explained that the severity of Plaintiff's depression and anxiety along with her physical symptoms precluded an ability to function successfully in the workplace. (Tr. 545-46). Mr. Van Leuven tied Plaintiff's increased pain to the intensity of her increased depressive and anxiety symptoms. (Tr. 546). He also found that Plaintiff would miss on average four days per month of work. (Tr. 547). He added that Plaintiff would love to work but her physical and emotional symptoms were too severe and were not expected to improve over time despite treatment. (Tr. 547).

In the decision, the ALJ considered licensed mental health counselor Mr. Van Leuven's opinion and afforded it little weight. (Tr. 32). The ALJ stated his reasons:

> As for the opinion evidence, I afford little weight to the opinion of the claimant's licensed mental health counselor that the claimant's Global Assessment of Functioning (GAF) score is 25 and that the claimant is unable to function successful[ly] in the workplace based on various aptitudes (Ex. 13F). First, I give little weight to GAF scores, as they are vague, one-time assessments that speak little to the claimant's overall functioning over time and provide little insight into the claimant's exact limitations. Second, this opinion is very inconsistent with the counseling treatment notes showing stable, mild symptomology, albeit with some variations and successes, (Ex. 12F), so it appears to significantly overstate the claimant's limitations.

(Tr. 32).

The ALJ first gave little weight to Mr. Van Leuven's finding that Plaintiff's current GAF score was 25 and highest GAF score for the past year was 25. (Tr. 32). The ALJ found GAF scores in general are vague, one-time assessments that do not address Plaintiff's overall functioning and provide little insight into Plaintiff's exact limitations. (Tr. 32). "A GAF score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.' . . . The GAF scale accounts for psychological, social, and occupational limitations, but not environmental or physical impairments." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000)). The ALJ correctly found that GAF scores do not reflect Plaintiff's overall ability to do work. *See id.* Plaintiff also concedes that even the American Psychiatric Association now finds that GAF scores lack clarity and are "of questionable psychometrics in routine practice." (Doc. 13, p. 12). Finally, the ALJ considered all of Mr. Van Leuven's records and his opinion as well as the other medical providers' records and other evidence in reaching an RFC determination. Therefore, the ALJ did not err in affording little weight to the GAF score findings of Mr. Van Leuven.

Second, the ALJ afforded little weight to Mr. Van Leuven's opinion because it was "very inconsistent" with the counseling treatment notes, which showed

stable, mild symptomology, with some variations and successes. (Tr. 32). The ALJ found Mr. Van Leuven's opinion "significantly overstate[d]" Plaintiff's limitations. (Tr. 32). Just before this finding, the ALJ assessed Plaintiff's four areas of mental functioning known as the "paragraph B" criteria. (Tr. 30-32). The ALJ cited Mr. Van Leuven's records in reaching some of his findings.

For example, in the second functioning area of interacting with others, the ALJ found mild limitations. (Tr. 31). He noted that Plaintiff socialized with others by eating at restaurants weekly, talking, watching television with her sister and a friend, living with a friend, and not being fired or laid off over problems with interacting with others. (Tr. 31). The ALJ also noted that although Plaintiff was generally cooperative at exams, she also presented with poor eye contract, citing Mr. Van Leuven's records. (Tr. 31).

Another example is the fourth functional area of adapting or managing oneself, in which the ALJ found Plaintiff had no limitations. (Tr. 32). The ALJ discussed Plaintiff's subjective complaints, but then noted that between 2016 and 2018, Plaintiff performed normally on some psychiatric examinations, with appropriate mood and affect, normal judgment, and was not suicidal. (Tr. 31). He compared these generally normal examinations with Mr. Van Leuven's records, and noted that at times, Plaintiff exhibited an anxious and depressed mood. (Tr. 32). He also cited Mr. Van Leuven's records and found, "[r]egardless, counseling

treatment notes indicate that the claimant reported success in terms of learning daily emotional coping skills, increasing her activity, and increasing her engagement in performing activities of daily living, despite reportedly stable symptoms (Ex. 12F)." (Tr. 31).

The ALJ considered Mr. Van Leuven's records as well as his opinion, including the records that found Plaintiff oriented times 3 with no evidence of hallucinations or delusions and able to communicate effectively with some prodding. (Tr. 537). He also considered the medical and other evidence of record, such as the neurologic examinations findings from Family Health Center records ranging from July 2016 to October 2018, showing Plaintiff oriented to person, place, and time, with appropriate mood and effect, and with normal judgment and non-suicidal. (Tr. 552, 556, 559, 661, 565). The ALJ then compared Mr. Van Leuven's records to his opinion that, among other things, found Plaintiff's depression and anxiety along with her physical symptoms so severe as to preclude her from being able to function successfully in the workplace. (Tr. 545). The ALJ accurately summarized and cited Mr. Van Leuven's records and substantial evidence supports his determination that Mr. Van Leuven's opinion was inconsistent with counseling treatment notes and therefore he properly afforded little weight to this opinion. For these reasons, reversal is not warranted on this issue.

B. **Appeals Council**

Plaintiff contends that the Appeals Counsel erred in denying Plaintiff's request for review and in finding that a more recent letter from Mr. Van Leuven dated June 6, 2019, did not relate to the period at issue. (Doc. 13, p. 12-16). Plaintiff claims Mr. Van Leuven's letter is new and material evidence that should have been considered by the Appeals Council. (Doc. 13, p. 15-16).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007)). Under new regulations effective in 2017,[3] the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). "Evidence is material if 'there is a reasonable possibility that the new

---

[3] In 2016, 20 C.F.R. § 404.970 was amended, effective January 17, 2017, but with compliance not required until May 1, 2017. *See* 81 Fed. Reg. 90987, 90996 (Dec. 16, 2016). Here, the Appeals Council rendered its decision on April 23, 2022. Thus, the new regulations apply.

evidence would change the administrative outcome.'" *Atha*, 616 F. App'x at 936. The new regulation added an additional requirement that the Appeals Council "will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435…." 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b).

If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). But the Appeals Council need not give a detailed explanation or further address each piece of new evidence individually. *Id.*

On June 6, 2019, less than two months after the ALJ's decision, Mr. Van Leuven wrote a letter about the ALJ's decision. (Tr. 20-22). In the letter, Mr. Van Leuven countered certain findings by the ALJ by generally referring to his Mental Medical Source Statement and his treatment records. (Tr. 20-22). For instance, he argued that the ALJ erred in finding Plaintiff's depression and anxiety do not cause more than minimal limitations in her ability to perform basic mental work activities and are therefore non-severe. (Tr. 20). He claimed that Plaintiff's depressive and anxiety symptoms are severe in their frequency and intensity and persist on a daily basis with no significant reduction in intensity, as he found in his Mental Medical Source Statement. (Tr. 20). As another example, he noted the ALJ found Plaintiff

had only mild limitations in understanding, remembering, or applying information. (Tr. 20). Mr. Van Leuven stated:

> It was indicated very clearly in session notes and the Mental Medical Source Statement that the ability to concentrate was severely compromised by the intensity, frequency, and longevity of the depressive symptoms. At no point from our first session on November 9, 2017 to when the Mental Medical Source. Statement was completed on July 14, 2019 is there any indication that concentration had improved. To state concentration ·was "no more than a mild limitation" is incorrect. The objective medical evidence of this is indicated by Mrs. Snyder consistently having difficulty staying focused during sessions and would frequently stop in mid-sentence, having lost the thread of what she was trying to communicate. At times, she would be able to refocus and continue but it was infrequent and usually in response to receiving verbal assistance regarding what she was talking about at the time.

(Tr. 20). The rest of the letter continues in the same vein with Mr. Van Leuven finding the ALJ erred in his mental assessment of Plaintiff and Mr. Van Leuven generally pointing out these alleged errors. (Tr. 21-22).

For Plaintiff to prevail on this issue, she must show: (1) good cause for not informing the Commissioner or submitting Mr. Van Leuven's letter earlier in the administrative process; (2) Mr. Van Leuven's letter was new, meaning it was chronologically relevant; and (3) the letter was material, meaning there is a reasonable probability it would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5), (b).

Good cause does not appear to be an issue because Mr. Van Leuven wrote the letter after the ALJ's decision and therefore could not have submitted it earlier in the

administrative process. Rather, the issue is whether Plaintiff can satisfy the requirements that the letter was new and material.

For the letter to be new, it must be chronologically relevant. 20 C.F.R. § 404.970(a)(5). Mr. Van Leuven's opinions about why the ALJ misinterpreted his Mental Medical Source Statement and his treatment notes could only have occurred after the ALJ's decision. Arguably Plaintiff has not satisfied this prong. But an argument can be made that Mr. Van Leuven generally refers to materials that were dated during the relevant period, so Plaintiff may have marginally shown these materials are new or chronologically relevant.

Even so, Plaintiff cannot show that the letter was material, meaning there is a reasonable probability it would change the outcome of the decision. In the decision, the ALJ carefully scrutinized Mr. Van Leuven's treatment records and Mental Medical Source Statement. After review of these records and all the medical and other records, the ALJ reached a different conclusion from Mr. Van Leuven as to severity of Plaintiff's mental health impairments. Nothing in Mr. Van Leuven's letter demonstrates that there is a reasonable probability that his letter would change the outcome of the ALJ's decision. Instead it merely rehashes information that was already considered by the ALJ. Thus, substantial evidence supports the Appeals Council's decision to deny Plaintiff's request for review and in finding Mr. Leuven's letter did not relate to the period at issue.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 14, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties